UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| JENNIFER B., | ) | |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) ) | 2:18-cv-00065-NT |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff Jennifer B's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is the October 12, 2017 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1, ECF No. 9-2), the Acting Commissioner's final decision is the ALJ Decision.

claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of affective disorder, anxiety disorder, and post-traumatic stress disorder. (R. 17 – 19, ¶¶ 3 – 4.) The ALJ further found that Plaintiff has the residual functional capacity (RFC) to perform simple, routine tasks that do not involve working with the public. (R. 20, ¶ 5.) Based on the ALJ's RFC finding and the testimony of a vocational expert, at step 5, the ALJ determined that Plaintiff was not disabled because she is able to perform substantial gainful activity, including in representative jobs such as laundry worker, kitchen helper, and linen grader. (R. 24 – 25, ¶¶ 10, 11.)

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso–Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff contends the ALJ erred when she (1) failed to address or consider an

affidavit of a vocational expert (David Meuse); (2) failed to quantify the number of available jobs by reference to specific job title instead of census codes; (3) failed to weigh properly Plaintiff's Veterans Administration (VA) disability rating; (4) failed to consider appropriately the 2012 report of examination provided by Kerry Kimball, Ph.D.; (5) failed to address a source statement from Cindy Boyack, M.D.; and (6) found res judicata barred the reopening of a prior administrative decision.

### A. Affidavit of David Meuse/Failure to Quantify Jobs

Plaintiff submitted an affidavit from David Meuse, a vocational expert, to address the testimony of the vocational expert who appeared at Plaintiff's hearing. (Affidavit of David W. Meuse, Ex. C17E, PageID # 327.) According to Mr. Meuse, when testifying to the number of jobs available in the national economy, the expert improperly relied on information contained in the publication "Occupational Employment Quarterly" (OEQ). (*Id.* ¶ 8.) Mr. Meuse maintains the methodology used in the publication to determine job estimates is "deceptively simple." (*Id.* ¶ 8.)

The First Circuit Court of Appeals has reasoned that a challenge to a vocational expert's reliance on the OEQ could raise a meritorious issue on appeal where the vocational expert testified at the hearing that "there was no way" to extract job numbers for particular jobs using the OEQ. *Wiley v. Colvin*, No. 13-2473, 2015 WL 9653048, * 1 – 2 (1st Cir. Feb. 11, 2015). Similarly, this Court has determined that it is appropriate to scrutinize vocational expert testimony to ensure that the vocational expert "gave job numbers for DOT-specific jobs, not aggregate groups of jobs of varying skill and exertional levels." *Small v. Colvin*, No. 1:12-cv-236-GZS, 2013 WL 1912892, at *8 (Mar. 30, 2013), *rec. dec.*

*adopted*, 2013 WL 1912862 (D. Me. May 8, 2013).

Defendant does not necessarily dispute Plaintiff's contention that a vocational expert's reliance on the OEQ could be problematic. (Response at 4, ECF No. 18.) Defendant, therefore, argues whether the ALJ should have considered the Meuse affidavit is essentially moot. Defendant, however, contends that any error was harmless because the ALJ's RFC finding supports application of the Medical-Vocational Guidelines at step 5 of the sequential evaluation process. (*Id.* at 5.)

At step 5 of the evaluation process, the burden shifts to the Commissioner to establish that the jobs a claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520(a)(4)(v), (g)(1); *Goodermote v. Sec'y of HHS*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid"), and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982). However, "[i]f a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability." *Ortiz v. Sec'y of HHS*, 890 F.2d 520, 524 (1st Cir. 1989).

The issue, therefore, is the extent to which Plaintiff's particular nonexertional limitations (and other vocational factors) erode the occupational base; i.e., "how much the individual's work capability is further diminished in terms of any types of jobs within these

4

exertional ranges that would be contraindicated by the additional limitations or restrictions." Titles II & XVI: Capability to Do Other Work—The Medical–Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, SSR 85–15 (S.S.A. 1985). If the degree of erosion of the occupational base can fairly be regarded as insignificant, Defendant could reasonably take "official notice," *Geoffroy v. Sec'y of HHS*, 663 F.2d 315, 318 (1st Cir. 1981), that jobs exist in significant numbers in the national economy, without calling upon a vocational expert to supply testimony to that effect. *See also Ortiz*, 890 F.2d at 524 ("[S]hould a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate."). For instance, in *Garcia-Martinez v. Barnhart*, 111 Fed. App'x 22, 23 (1st Cir. 2004), the First Circuit held in a per curiam, unpublished opinion, that the Commissioner permissibly relied on the Guidelines to satisfy the burden of proving the existence of work in the national economy where the claimant was found capable of routine, repetitive work that did not involve undue pressure or public interaction.

Here, the ALJ found that Plaintiff has the RFC to perform simple, routine tasks that do not involve working with the public. Given the RFC, Plaintiff's age as of her date last insured (34 years), and Plaintiff's vocational profile (high school education and some college), the Guidelines alone support the ALJ's step 5 finding that Plaintiff is not disabled. Remand, therefore, is not warranted.

**B. Failure to Weigh VA Rating/Report of Dr. Kimball**

The VA awarded Plaintiff a disability rating of 100 percent. Plaintiff argues the ALJ failed to weigh this evidence in her decision. (Statement of Errors at 7 – 8.) In

5

particular, Plaintiff argues the ALJ did not discuss the factors identified as the bases for the rating, or the underlying psychological examination report issued by Kerry Kimball, Ph.D. on June 7, 2012. (*Id.* at 8, referencing Ex. C5F, R. 633 – 40.) Plaintiff also contends the physicians who reviewed the medical record on behalf of Disability Determination Services did not demonstrate any familiarity with Dr. Kimball's findings. (*Id.* at 9.)

The VA awarded Plaintiff a 100 percent disability rating beginning June 4, 2011, her last date of employment. (Ex. C6D, R. 211, ECF No. 9-5.) The VA assessed a 70 percent rating for post-traumatic stress disorder with a depressive disorder, not otherwise specified. (*Id.*, R. 212.) The award notice states that the evidence in support of the rating included a VA psychological report of an examination at the Togus Medical Center dated June 7, 2012 (Dr. Kimball's report). (R. 215.) The notice also provides a list of factors that influenced the VA's rating determination; i.e., difficulty adapting to work, worklike settings and stressful circumstances, impaired impulse control, obsessional rituals, occupational and social impairment with reduced reliability and productivity, difficulty establishing and maintaining effective work and social relationships, disturbance of motivation and mood, flattened affect, impairment of short-term and long-term memory, panic attacks more than once per week, anxiety, and chronic sleep impairment. (*Id.*) The findings were drawn from a checklist of "symptoms" included in Dr. Kimball's report. (Ex. C5F, R. 639 – 40.)

A VA disability determination is entitled to some weight in the SSA disability context. *Genness-Bilecki v. Colvin*, No. 1:15-cv-387-JHR, 2016 WL 4766229, at *2 – 3 (D. Me. Sept. 13, 2016) (collecting District of Maine precedent and recommending remand

6

where the ALJ dismissed the VA rating decision "out of hand on the sole basis that the standards differ," even though the ALJ evidently reviewed and discussed the treatment record that informed the VA decision).

In this case, the ALJ considered the VA "awards" (citing Exs. C6D, C7D), and explained that she did not give the opinion great weight because (1) the VA applies different standards for disability ratings than the standards applied by the Social Security Administration, (2) the rating decision is conclusory and does not explain how Plaintiff's conditions result in a disability, and (3) the VA treatment records show fairly normal functioning and limited treatment. (R. 23.)

The ALJ's discussion of the VA records is more meaningful than the "out of hand" rejection of the VA materials in *Genness-Bilecki*. The ALJ's assessment of the VA records is reasonable. The ALJ noted that the VA record reflected fairly normal functioning and limited treatment, and as Defendant argued, the record supports the ALJ's determination. (Response at 7 – 8, citing R. 423, 493 – 94, 499, 503, 581, 777 – 778, 840, 845.) The record in fact demonstrates that during her treatment with the VA, Plaintiff exhibited intact/good memory, and euthymic mood with congruent affect. Indeed, the ALJ cited several entries in the VA record as supportive of her findings. (R. 21 – 22.)

In addition, the ALJ "adopted" the mental RFC findings of David Houston, Ph.D. (R. 23), who considered the 70% VA rating associated with Plaintiff's PTSD, and the "6/7/12 Togus (PhD) C&P Exam, PTSD" record.[2] (Ex. C5A, R. 121.) The reference to

---

[2] C&P appears to be a reference to the VA's compensation and pension examination process.

the June 7, 2012 "PhD" record can fairly be considered a reference to Dr. Kimball's report. While the ALJ did not specifically identify Dr. Kimball in her decision, given the significance of Dr. Kimball's report to the VA rating, the ALJ's assessment of the VA rating is equally applicable to Dr. Kimball's report.

In short, the ALJ's explanation of the weight afforded to the VA rating, along with her review of the underlying records and the "great weight" she placed on the findings of Dr. Houston, constitute an adequate assessment and discussion of the VA records, including the report of Dr. Kimball.

### C. Dr. Boyack's Source Statement

Plaintiff argues the case should be remanded for the ALJ to consider and weigh a report prepared by Cindy Boyack, M.D. (Ex. C2F). (Statement of Errors at 9.)

Plaintiff received an outpatient evaluation on January 5, 2015, on a referral from a treatment provider who inquired whether a Bipolar diagnosis was warranted. (Ex. C2F, ECF No. 9-7.) Following an interview of Plaintiff, Dr. Boyack diagnosed Bipolar disorder type II, and she recommended certain medication management and cognitive behavioral therapy. (*Id.*) Dr. Boyack also assessed a GAF score of 49. (*Id.*) In her recommendation, Dr. Boyack noted that Plaintiff had experienced a diminution in her PTSD symptoms, though they "remain quite disabling." (R. 309.)

Plaintiff argues the ALJ did not weigh Dr. Boyack's opinion or consider the significance of the GAF score. (Statement of Errors at 9.) The ALJ discussed the results of Dr. Boyack's consultation in her discussion of Plaintiff's mental RFC, and she recounted the salient comments and recommendations. Contrary to Plaintiff's argument, the ALJ was

8

not required to do more. Dr. Boyack's "quite disabling" comment addressed a matter reserved to the Commissioner, 20 C.F.R. § 404.1527(d)(1), (3); the isolated GAF score did not require a specific discussion because it is not necessarily inconsistent with the ALJ's RFC finding, *LaFontaine v. Astrue*, No. 10-527, 2011 WL 4459197, at *4 (D. Me. Sept. 25, 2011), *rec. dec. adopted*, 2011 WL 4860169 (D. Me. Oct. 13, 2011) ("A GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions."); and Dr. Boyack did not otherwise offer any assessment of Plaintiff's ability to engage in work activities.

### D. Res Judicata Finding

Plaintiff filed two prior DIB applications, one on August 6, 2013, and one on May 1, 2014. Plaintiff argues the ALJ erred when she refused to reopen the earlier applications as res judicata. Because Plaintiff does not raise a colorable constitutional claim, Plaintiff's challenge is not within the Court's jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 108 (1977); *Torres v. Sec'y of HHS*, 845 F.2d 1136, 1138 (1st Cir.1988) ("Absent a colorable constitutional claim not present here, a district court does not have jurisdiction to review the Secretary's discretionary decision not to reopen an earlier adjudication.").

### Conclusion

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

### **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district

9

court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

       Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                                    /s/ John C. Nivison
                                    U.S. Magistrate Judge

Dated this 11th day of October, 2018.